IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ASPEN MARKETING SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 2864 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| YVON RUSSELL and EVENTNEXT MARKETING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Aspen Marketing Services, Inc. ("plaintiff" or "Aspen"), has brought a four-count complaint against defendants, Yvon Russell ("Russell") and Eventnext Marketing, Inc. ("Eventnext"). The complaint alleges breach of contract against Russell (Count I), tortious interference with business relationships against both defendants (Count II), tortious interference with contract against Eventnext (Count III), and violation of the Illinois Trade Secrets Act against both defendants (Count IV). Defendants have moved to strike plaintiff's request for punitive damages and injunctive relief as to Count I and plaintiff's request for attorney's fees as to Counts II and III, and to dismiss all counts of plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons discussed below, the motion to strike is granted as to injunctive relief and denied as to punitive damages and attorney's fees, and the motion to dismiss is granted as to Count III and is denied as to Counts I, II, and IV.

# **FACTS**[1]

In 1998, Russell founded the event marketing agency M3 Marketing Group. In 2000, Russell sold this agency to Aspen. After the sale, Russell entered into a Confidentiality Agreement with Aspen and continued his employment as Group President. The Agreement contained noncompetition,[2] nonsolicitation,[3] and nondisclosure[4] restrictive covenants. As part of his employment with Aspen, Russell helped develop, and had access to Aspen's confidential and

---

[1] For the purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008).

[2] The noncompetition covenant states that for the period of time equal to the amount of time attributable to the employee's severance payments following termination, here, six months, the employee "shall not directly or indirectly . . . compete with the Company within the United States (the "Protected Region") in: selling or developing marketing services which include but are not limited to marketing strategy, direct marketing, promotional programs, interactive marketing, event marketing, database management and/or analytics, branded products and creative design; or (ii) any other line of business in which Company was engaged at any time during Employee's employment with Aspen; or (iii) any other line of business into which Company, during Employee's employment with Aspen, formed an intention to enter during the Noncompetition Period, and which the Board has disclosed to Employee in writing within ten (10) days following the termination of Employee's employment with Aspen."

[3] The nonsolicitation covenant states that during the Noncompetition Period plus one year, here, one and a half years, the former employees will not "solicit business from or conduct business with any customer or client served by Company at any point during Employee's employment with Aspen; or solicit business from or conduct any business with any person or entity that was . . . solicited or identified as a business prospect by Employee or any other Company employee, agent or consultant; or interfere or attempt to interfere with any transaction, agreement, prospective agreement, business opportunity or business relationship . . . ."

[4] One of the nondisclosure covenants states that: "Employee shall not . . . at any time, directly or indirectly: (I) use any Confidential Information for any purpose; or (ii) disclose or otherwise communicate any Confidential Information to any person or entity; or (iii) accept or participate in any employment, consulting engagement or other business opportunity that inevitably will result in the disclosure or use of any Confidential Information." Confidential information is defined in paragraph 1(a) as including: "all nonpublic information . . . relating to or arising from Company's business, including, without limitation, trade secrets used, developed or acquired by Company in connection with its business. . . ."

proprietary information such as: pricing model and gross profit levels; development of pricing processes; creative concepts; marketing strategies; and historical customer data and terms of customer contacts. According to plaintiff, Aspen takes reasonable measures to maintain the secrecy of its confidential and proprietary information.

Russell's employment with Aspen was terminated on June 27, 2007. Russell received a six-month severance package. On November 27, 2007, Russell's company Eventnext was incorporated. Eventnext provides the same marketing services as Aspen and is considered by plaintiff to be a direct competitor. According to plaintiff, shortly after forming his new business, Russell began soliciting Aspen clients that he had serviced during his employment with Aspen. Specifically, plaintiff claims that Russell contacted Mutual of Omaha Insurance Company ("Mutual of Omaha"), one of Aspen's customers since April 1, 2005.

Aspen was responsible for creating and maintaining marketing services for Mutual of Omaha's Wild Kingdom program (the "Wild Kingdom Tour"), which produced revenues of over $2 million in 2005, and over $1 million in 2006 and 2007. In Spring 2008, Aspen became aware that Russell had contacted a former Aspen employee who had worked on the Wild Kingdom Tour to discuss the account. On May 12, 2008, Aspen sent Russell a letter reminding him of his obligations under the Confidentiality Agreement. According to plaintiff, Russell continued to contact various individuals associated with the Wild Kingdom Tour despite the letter. On March 3, 2009, Aspen discovered that Mutual of Omaha had moved its business to Russell and Eventnext, contrary to assertions made by a Mutual of Omaha representative that the Wild Kingdom Tour was being retired.

## **DISCUSSION**

I.    Motion to Strike

Defendants have moved to strike plaintiff's prayer for relief as to Count I for punitive damages and injunctive relief, and to strike plaintiff's request for attorney's fees in Counts II and III.  First, defendant argues that plaintiff improperly seeks punitive damages and injunctive relief.  Under Illinois law, punitive damages are generally not recoverable for breach of contract; however, courts will sometimes award punitive damages for a bad faith breach of contract. *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719 (7th Cir. 2008) (citing *Morrow v. L.A. Goldschmidt Associates, Inc.,* 492 N.E.2d 181, 183–86 (Ill. 1986)).  Punitive damages may be awarded only if a plaintiff shows that the breach of contract "involved tortious misconduct, such as duress or fraud or abuse of fiduciary duty." *Zapata Hermanos Sucesores, S.A. v. Hearthside Banking Co.*, 313 F.3d 385, 390 (7th Cir. 2002).  Defendants' motion to strike punitive damages in Count I is premature at this stage of the litigation, and is therefore denied.

Plaintiff concedes that its request for injunctive relief under Count I is "no longer a viable form of relief."  Accordingly, defendants' request to strike plaintiff's prayer for injunctive relief in Count I is granted.

Second, defendants argue that there is no basis upon which plaintiff can seek attorney's fees for Counts II and III.  A plaintiff can receive attorney's fees for time spent on state law claims where these claims are not "truly fractionable" from a successful claim authorizing the attorney fee awards.  *See Independence Tube Corp., v. Copperweld Corp.*, 543 F. Supp. 706, 712 (N.D. Ill. 1982).  In *Independence Tube Corp.*, the court concluded that the plaintiff was entitled to attorney's fees for time spent on state law claims in connection with the plaintiff's successful antitrust claim under section 4 of the Clayton Antitrust Act.  *Id.*  The court stated that claims are

not "truly fractionable" where time spent on common law claims would have been spent in connection with the successful antitrust claim authorizing the attorney's fee award, even if other claims had not been brought. *Id.* at 712. Plaintiff argues that its common law tort claims are not fractionable from the breach of contract and trade secrets act claims because the same discovery would be conducted for these claims regardless of the common law tort claims. Defendants argue that plaintiff has not cited any case law that supports the proposition that a contractual fee provision as opposed to a statutory fee provision can be expanded to provide recovery of attorney's fees for such common law claims. The court agrees. The attorney's fee award in *Independence Tube Corp.* was premised on a statutory fee provision, and does not support the contention that a contractual fee provision may provide attorney's fees for common law claims. In the instant case, however, the Illinois Trade Secrets Act provides a statutory attorney's fee provision.[5] Therefore, defendants' motion to strike attorney's fees in Counts II and III is premature at this stage of the litigation, and is therefore denied.

II.     Motion to Dismiss

    **A. Standard**

Defendants have moved to dismiss all counts of plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Such motions challenge the sufficiency of the complaint, not the merits, and should be granted only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Bell Atlantic Corp. v.*

---

[5] The Illinois Trade Secrets Act states: "If (I) a claim of misappropriation is made in bad faith, (ii) a motion to terminate an injunction is made or resisted in bad faith, or (iii) willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." 765 ILCS 1065/5.

*Twombly*, 550 U.S. 544, 555 (2007). To state a claim on which relief can be granted, a plaintiff must satisfy two conditions: (1) the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests; and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009); *Twombly*, 550 U.S. at 555; *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).

### B. Enforceability of the Employment Contracts

Before the court can address defendants' individual arguments for dismissal of Count I, the court must first address defendants' contention that the employment contract between plaintiff and Russell is unreasonably overbroad and therefore unenforceable.

Defendants argue that the restrictive covenants are overbroad and therefore unenforceable because they contain unreasonable geographic and scope limitations. Plaintiff asserts that determining whether the restrictive covenants are reasonable and enforceable are not proper determinations on a motion to dismiss. Plaintiff's arguments are unavailing. This court has previously ruled on the reasonableness of restrictive covenants on a motion to dismiss. *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 407–09 (N.D. Ill. 2001).

Restrictive covenants operate as partial restraints on trade and therefore are closely scrutinized by courts in Illinois. *Cambridge Eng'g, Inc. v. Mercury Partners 90 BI, Inc.,* 879 N.E.2d 512, 522 (Ill. App. 1st Dist. 2007). In determining the reasonableness of a restrictive covenant, the court considers whether enforcement of the covenant is: (1) greater than necessary to protect the plaintiff; (2) oppressive to the defendant; and (3) not harmful to the public. *Liautaud v. Liautaud*, 221 F.3d 981, 987 (7th Cir. 2000) (citations omitted). Restrictive

6

covenants have been held valid and enforceable when the limitations as to time and territory are reasonable. *Cockerill v. Wilson*, 281 N.E.2d 648, 650–51 (Ill. 1972) (citations omitted).

First, defendants argue that the noncompete restrictive covenant is geographically unenforceable because it seeks to prevent Russell from competing with plaintiff anywhere within the United States. The lack of geographic limits, however, is not *per se* unreasonable, if the "complete bar on competition is reasonably related to the promisee's interest in protecting his own business." *Liautaud*, 221 F.3d at 987. Courts will generally uphold a restriction on competition that is coextensive with the area where the promisee is doing business. *Id.* at 988 (citing *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 685 N.E. 2d 434, 442 (Ill. App. 2d Dist. 1997); *see also Gorman Publ'g Co. v. Stillman*, 516 F. Supp. 98, 104 (D.C. Ill. 1980) (finding a nationwide restrictive covenant justified by the nationwide nature of plaintiff's business).

Plaintiff alleges that its nationwide noncompete restrictive covenant is justified by the nationwide nature of its business. Specifically, plaintiff points to its claim that its services for the Wild Kingdom Tour included "developing and maintaining mobile experiential displays and interactive exhibits that toured various venues and events covering approximately 40 states throughout the country." Accepting these allegations as true, the court finds that the geographic limitation in plaintiff's noncompete restrictive covenant is not *per se* unreasonable because plaintiff's mobile and interactive exhibits are displayed throughout the country. Therefore, the

essential question is whether the covenant was designed to protect a legitimate business interest.[6]

Illinois courts recognize that an employer has a legitimate business interest to justify enforcement of a noncompete covenant where: (1) the former employee learns trade secrets or acquires other confidential information during his employment and subsequently attempts to use it for his own benefit; or (2) the customer relationships are near-permanent and but for the employee's association with the employer the employee would not have had contact with the customers. *Outsource Int'l, Inc. v. Barton*, 192 F.3d 662, 667 (7th Cir. 1999). Plaintiff alleges that defendant, Russell, had "near exclusive" knowledge of its business, clients and marketing projects, and was aware of all confidential information; and used this knowledge in his new company. Accepting these allegations as true, plaintiff has a legitimate business interest to justify enforcement of a noncompete covenant. Accordingly, the court concludes that the noncompete covenant is geographically reasonable.

Second, defendants argue that the scope of the noncompete clause is unenforceable because it seeks to prohibit Russell from directly or indirectly competing with plaintiff in "any . . . line of business in which [Aspen] was engaged at any time during [Russell's] employment with Aspen." Conspicuously missing from defendants' argument is any discussion of the temporal scope of this provision. In the instant case, Russell's noncompetition period is only six months. This time period is equal to the amount of time attributable to the employee's

---

[6] The court is aware of *Sunbelt Rentals, Inc. v. Ehlers*, 915 N.E.2d 862, 869–70 (Ill. App. 4th Dist. 2009) (rejecting the legitimate business interest test). The Illinois Supreme Court, the United States Court of Appeals for the Seventh Circuit, and this court, however, have not rejected the application of the legitimate business interest test.

severance payments following termination. The court finds that this six month restrictive covenant is not an unreasonable restraint of trade.

First, the restrictive covenant is not greater than necessary to protect the plaintiff. Second, it is not oppressive to defendant, Russell, because the noncompetition period is only six months. Finally, the court finds that this covenant is not harmful to the public. The Illinois Supreme Court has held, "A private contract, or provision therein, will not be declared void as contrary to public policy unless it is 'clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy' or it is clearly shown that the contract is 'manifestly injurious to the public welfare.'" *Mohanty v. St. John Heart Clinic*, 866 N.E.2d 85, 89, 93, 95, 225 Ill.2d 52, 58, 65,69 (Ill. 2006) (citations omitted) (holding a five year and five mile restrictive covenant in the plaintiffs' physician employment contracts valid and enforceable). The court finds that the noncompete restrictive covenant is not contrary to the constitution, statutes or judicial decisions of this state. Consequently, the noncompete restrictive covenant is enforceable.

Finally, defendants argue that the nonsolicitation restrictive covenant is unenforceable because it seeks to limit Russell from soliciting or conducting business with customers he serviced while employed at Aspen, as well as "any customer or client served by [Aspen] at any point during [Russell's] employment with Aspen." Defendants also contend that the provision is unreasonably overbroad because it seeks to prohibit Russell from interfering or attempting to interfere with "any transaction, agreement, prospective agreement, business opportunity or business relationship in which [Aspen] or any affiliate was involved at any point during [Russell's] employment with Aspen."

9

Nonsolicitation covenants may be held enforceable only if the restrictions are reasonably related to the employer's interest in protecting customer relations that its employees developed while working for the employer. *Arpac Corp. v. Murray*, 589 N.E.2d 640, 649 (Ill. App. 1 Dist. 1992) (citations omitted). As discussed above, the court finds that the nonsolicitation covenant is enforceable because it is reasonably related to protect plaintiff's interest in protecting its customer relations that were developed by its employees while working for plaintiff. Accordingly, to the extent that defendants' motion to dismiss Count I is based on the enforceability of the restrictive covenants, the motion is denied. The court will now address defendants' individual arguments on the pleadings of Count I.

### C. Count I- Breach of Contract

Count I alleges breach of contract against defendant Russell. First, defendant argues that plaintiff's complaint is unclear whether it is seeking to enforce a confidentiality provision, a noncompete provision, a nonsolicitation provision, or the entire Confidentiality Agreement. Plaintiff asserts that it seeks to enforce the entire Confidentiality Agreement. Plaintiff argues that although it did not assert any specific provision of the contract within the Count, defendants have enough information to understand the "*gravamen* of the Complaint." (emphasis in original). The court agrees that plaintiff's complaint provides sufficient notice to defendant of its breach of contract claim, and therefore survives dismissal on the pleadings.

Second, defendant argues that Count I is insufficient because the information plaintiff seeks to protect is not properly plead as trade secrets. To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract; (2) breach of that contract by the wrongful conduct of the defendant; and (3) damages as a result of the breach. *Burrell v. City of*

*Mattoon*, 378 F.3d 642, 651 (7th Cir. 2004) (citations omitted). Plaintiff states a claim for breach of contract by alleging the existence of a valid contract, a violation of the contract "by failing to return to Aspen, and/or by misappropriating, and/or by using or divulging to others without authorization, and/or by engaging in employment activities which threaten the inevitable unauthorized use or disclosure of Aspen's confidential and proprietary business information," and damages as a consequence of Russell's conduct. Plaintiff correctly asserts that, "Russell could breach his contract with plaintiff by the use of confidential information that rises to the level of a trade secret and or confidential information that does not rise to that level." Therefore, Count I survives defendant's motion to dismiss.

### D. Defendants Contentions that Counts II and III are Preempted by the Illinois Trade Secrets Act

Count II alleges tortious interference with business relationship against defendants, and Count III alleges tortious interference with contract against Eventnext. Defendants' argue that the Illinois Trade Secrets Act ("ITSA") preempts Counts II and III.

Section 8(a) of ITSA states that: "this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8. Claims are preempted by ITSA "only when they rest on the conduct that is said to misappropriate trade secrets." *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404–05 (7th Cir. 2005). Therefore, the court reviews Counts II and III to determine whether they are dependent on the misappropriation of a trade secret.

Plaintiff asserts that Counts II and III are not preempted by ITSA because the information at issue in the claims is "confidential information" which is broader in definition than "trade secret" under ITSA. The court acknowledges that "while there may be substantial overlap

11

between confidential information and trade secrets, 'an enforceable restrictive covenant may protect material not properly characterized as a trade secret' and thus affords broader protection than does trade secret law. *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 711 (N.D. Ill. 2009) (quoting *Smith Oil Corp. v. Viking Chem. Co.,* 468 N.E.2d 797, 800 (Ill. App. 2d Dist. 1984)).

In *SKF*, the court held that a plaintiff's claims for breach of fiduciary duty and unfair competition were not preempted by ITSA because the plaintiff's amended complaint did not claim that all of the transferred data constituted trade secrets. *Id.* at 718–719. The court stated that "[i]f the only manner in which Defendants are alleged to have unfairly competed was by stealing trade secrets, then the claim would be preempted, but the transfer to ERSI of other documents not considered to be trade secrets defeats that argument." *Id.* at 718. The court was satisfied that even if some of what the defendants "filched" constituted a trade secret, the alleged breach of fiduciary duty claim has aimed at a different harm than the trade secrets claim. *Id.* Similarly as in *SKF*, in the instant case plaintiff does not claim that defendants breached their duty to it based solely on information that constitutes trade secrets. Instead, Count II alleges that defendants breached their duty based on the confidentiality agreement between Russell and plaintiff, which includes trade secrets and other defined "Confidential Information." Therefore, the court finds that Count II is not preempted by ITSA.

Plaintiff's contentions in Count III, however, fall within the ITSA's preemption clause because Count III is premised on the same conduct that plaintiff alleges gives rise to its ITSA claim. The only manner in which defendant Eventnext is alleged to have induced Russell to breach his duty to plaintiff is by Russell "stealing trade secrets." Plaintiff alleges that defendant

Eventnext utilized Russell's "inherent knowledge of Aspen's customers, products, marketing schemes, pricing models and gross profit levels to induce Aspen's customers to discontinue doing business with Aspen." Similarly, in alleging its claim under ITSA, plaintiff unequivocally alleges that its "customer information, business strategy and marketing plans, financial data and revenue information, and its product design information" are trade secrets. Therefore, ITSA preempts plaintiff's claim for tortious interference with contract, and the court grants defendants' motion to dismiss Count III.

### E. Count II – Tortious Interference with Business Relationships

Defendants argue that Count II is insufficient to state a claim because plaintiff's complaint does not "suggest[] that any ongoing business relationship with customers was more than speculative." To state a claim for tortious interference with prospective business relationships, a plaintiff must allege: (1) a valid business relationship or a reasonable expectation of entering into a valid business relationship; (2) that defendant had knowledge of that relationship or expectancy; (3) defendant intentionally interfered, inducing or causing a breach or termination of the relationship or expectancy; and (4) that damages were suffered as a result. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003); *Labor Ready*, 149 F.Supp.2d at 410. Defendants assert that plaintiff must also identify specific third parties that were induced by a defendant to refrain from dealing with plaintiff. The Federal Rules, however, do not require identification of specific third parties or a class of third parties at this stage in the litigation. *See Cook v. Winfrey,* 141 F.3d 322, 328 (7th Cir. 1998)*; Derson Group, Ltd. v. Right Management Consultants*, 683 F. Supp. 1224, 1229 (N.D. Ill. 1988).

The court finds that plaintiff states a claim for tortious interference with prospective business relationship. Plaintiff has alleged that it has valid and continual business relationships with its customers, that defendants had knowledge of plaintiff's customer relationships, that defendants induced plaintiff's customers to terminate their business relationships with plaintiff, and that it has suffered damages as a result of defendants' conduct. Therefore, defendants' motion to dismiss Count II is denied.

**F. Count IV – Actual and Threatened** *Misappropriation of Trade Secrets*

Count IV alleges defendants violated ITSA through actual and threatened misappropriation of trade secrets. To state a claim under ITSA, a plaintiff must allege that the information at issue: (1) is a trade secret;[7] (2) was misappropriated; and (3) was used in defendant's business. *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003). To determine whether a trade secret exists, Illinois courts frequently refer to six common law factors: (1) the extent to which the information is known outside of the plaintiff's business; (2) the extent to which the information is known by employees and others involved in the plaintiff's business; (3) the extent of measures taken by the plaintiff to guard the secrecy of the information; (4) the value of the information to the plaintiff's business and to its competitors;

---

[7] ITSA defines a trade secret as:
> [I]nformation, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2.

(5) the amount of time, effort and money expended by the plaintiff in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Id.* at 722.

Defendants argue that the alleged trade secrets plaintiff claims defendants misappropriated are insufficient to state a cause of action under ITSA because they are general areas of information. Plaintiff replies that detailed information of the alleged trade secrets is not required at this stage of the litigation. To state a claim for misappropriation of trade secrets "it is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated"; however, trade secrets "need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 920–21 (N.D. Ill. 2001) (citations omitted). Defendants incorrectly rely on summary judgment cases to support their motion to dismiss.[8] Defendants also argue that plaintiff fails to satisfy the existence of a trade secret because "Aspen's unilateral inaction belies any claim that the purported trade secrets are valuable." The court disagrees.

The court finds that plaintiff has adequately pleaded that defendants violated the ITSA. This court has held that alleging misappropriation of information including: "[U]nique, confidential business practices, models and data; customer lists . . . pricing and marketing strategies" satisfies the pleading requirement for misappropriation of trade secrets under ITSA.

---

[8] For example, to survive a motion to dismiss plaintiff is required only to provide defendants with notice as to the substance of the claims, and is not required to "articulate protectable trade secrets with specificity," as it would in a summary judgment proceeding. *Nilssen v. Motorola, Inc.*, 963 F. Supp. 664, 672 (N.D. Ill. 1997) (citation omitted).

15

*Labor Ready*, 149 F. Supp. 2d at 412. Similarly, in the instant case the information plaintiff accuses defendants of misappropriating includes: "customer information, business strategy and marketing plans, financial data and revenue information, and its product design information." Plaintiff alleges that this information is "sufficiently secret to derive economic value from not being generally known to other persons who can obtain economic value from its disclosure or use." Plaintiff claims its information is kept secret through restricting access to such information and requiring employees to sign restrictive covenants in their employment contracts, among other means. Plaintiff also asserts that the economic value of its confidential information and trade secrets "as it pertained to *only one* of its customers for *only one* of its projects was at least $3 million." (emphasis in original). Plaintiff alleges that defendants misappropriated information from plaintiff, and used the information in the solicitation of plaintiff's customers to the benefit of defendant, Eventnext. Taking these allegations as true, plaintiff has stated a claim sufficient for misappropriation of trade secrets under ITSA. Defendants' motion to dismiss Count IV is denied.

## CONCLUSION

For the reasons set forth above, defendants' motion to strike is granted as to injunctive relief and denied as to punitive damages and attorney's fees. Defendants' motion to dismiss is granted as to Count III and is denied as to Counts I, II, and IV. Defendants are directed to answer the remaining counts of the complaint on or before December 24, 2009. The parties are directed to prepare and file a joint status report, using this court's form, on or before January 8, 2010. This matter is set for a status hearing on January 14, 2010, at 9:00 a.m.

**ENTER:** December 3, 2009

_____
**Robert W. Gettleman
United States District Judge**